IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| PENNSYLVANIA MANUFACTURERS INDEMNITY COMPANY, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:13CV217 |
| | ) | |
| | ) | |
| AIR POWER, INC., GRACO, INC., and STEVEN RAY FREEMAN, | ) ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

BEATY, District Judge.

This matter is before the Court on a Motion to Dismiss or Transfer [Doc. #6] filed by Defendant Steven Ray Freeman ("Defendant Freeman"), a Motion to Dismiss [Doc. #13] filed by Defendant Graco, Inc. ("Defendant Graco"), and a Motion to Stay [Doc. #21] filed by Air Power, Inc. ("Defendant Air Power" or "Air Power"). For the reasons set forth herein, the Court will grant Defendant Freeman's Motion to Dismiss, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Further, the Court will grant Defendant Graco's Motion to Dismiss for failure to state a claim, pursuant to Rule 12(b)(6). Finally, the Court will also grant Defendant Air Power's Motion to Stay.

I.    FACTUAL BACKGROUND

The factual allegations of Plaintiff's Amended Complaint, taken as true for purposes of Defendants' Motions, allege that an accident occurred on October 4, 2012, at a Unique

Fabricating South, Inc. ("Unique Fabricating") facility in Lafayette, Georgia. Unique Fabricating acquired a piece of industrial equipment manufactured by Defendant Graco, which malfunctioned on October 4, 2012. Unique Fabricating contacted Defendant Graco seeking a recommendation for a distributor of Graco equipment that would be able to provide maintenance and service assistance on the malfunctioning equipment. Defendant Graco referred Unique Fabricating to Defendant Air Power for this matter.

Defendant Freeman, an employee of Unique Fabricating, was servicing the malfunctioning equipment on October 4, 2012. Unique Fabricating called Defendant Air Power seeking technical assistance and advice regarding the malfunctioning equipment, and an Air Power agent located in North Carolina attempted to provide assistance over the phone. While on the phone with the Air Power agent and while Defendant Freeman was attempting to service the malfunctioning equipment, the equipment unexpectedly and suddenly began operating, injuring Defendant Freeman. On January 30, 2013, Defendant Freeman brought a personal injury lawsuit against Defendant Graco and Defendant Air Power in Dekalb County, Georgia. Defendant Graco removed the action ("underlying litigation") to the Northern District of Georgia on March 1, 2013.[1]

When this incident occurred on October 4, 2012, Defendant Air Power was insured under a commercial insurance policy issued by Plaintiff. Plaintiff's current action before this Court seeks a declaratory judgment that it is not required to defend or indemnify the insured, Defendant Air Power, in the underlying litigation in Georgia. In addition to suing Defendant

---

[1] Freeman v. Graco, Inc. et al., No. 1:13cv662, (N.D. Ga.).

Air Power in this declaratory judgment action, Plaintiff also seeks a declaratory judgment against Defendant Freeman and Defendant Graco that Plaintiff is not required to defend or indemnify Defendant Air Power in the underlying litigation, with respect to any claims that have been or may be asserted by Defendant Freeman.

Defendant Freeman moves for this Court to dismiss, or alternatively transfer, this declaratory judgment action against him, contending that there is a lack of personal jurisdiction over him, venue is improper, and the Northern District of Georgia would be more convenient, as that is the district in which the underlying litigation is taking place. (Def. Freeman's Mot. to Dismiss/Transfer [Doc. #6]). In addition, Defendant Graco moves for this Court to dismiss the declaratory judgment action against it, on the basis that Plaintiff has failed to state a claim against Defendant Graco that can be granted. (Def. Graco's Mot. to Dismiss [Doc. #13]. Finally, Defendant Air Power asks the Court to stay this proceeding,[2] pending the outcome of the underlying litigation in the Northern District of Georgia. (Def. Air Power's Mot. to Stay [Doc. #21]).

## II.    DEFENDANT FREEMAN'S MOTION TO DISMISS OR TRANSFER

Defendant Freeman moves for dismissal (or transfer, as an alternative request) first on the basis that this Court does not possess personal jurisdiction over him. "When personal jurisdiction is challenged under Rule 12(b)(2), the jurisdictional question is resolved by the judge,

---

[2] Defendant Air Power mentions in its Reply [Doc. #25] that, in the alternative, the Court should consider transferring the matter to the Northern District of Georgia. However, Defendant Air Power does not list or attempt to apply the factors that courts consider in determining whether to grant a transfer under 28 U.S.C. § 1404. Therefore, the Court will only consider Plaintiff's request for a stay.

with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." Human Res. Certification Inst. v. Human Res. Prof'l Ass'n, 453 F. App'x 349, 350 (4th Cir. 2011) (citing Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 59-60 (4th Cir. 1993)). Where, as here, neither party disputes the factual allegations in Plaintiff's Amended Complaint, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff." In re Celotex Corp., 124 F.3d 619, 628 (4th Cir. 1997) (quoting Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)) (internal quotation marks omitted).

In determining whether the Court has personal jurisdiction over a non-resident defendant, the Court must perform a two-step analysis: "(1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003) (citing Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001)). North Carolina's long-arm statute establishes jurisdiction over a defendant "engaged in substantial activity within this State, whether such activity is wholly interstate, intrastate, or otherwise." N.C. Gen. Stat. § 1–75.4(1)(d) (2013). North Carolina's long-arm statute has been interpreted to extend to the outer limits allowed by the Due Process Clause. Nolan, 259 F.3d at 215 (citing Century Data Systems, Inc. v. McDonald, 109 N.C. App. 425, 427, 428 S.E.2d 190, 191 (1993)). "Thus, the dual jurisdictional requirements collapse into a single inquiry as to whether the defendant has such 'minimal contacts' with the forum state that 'maintenance of the suit does

not offend "traditional notions of fair play and substantial justice.""" Id. at 215 (quoting Int'l.

Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

In addressing this inquiry, courts differentiate between general jurisdiction and specific

jurisdiction. Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2853, 180 L.

Ed. 2d 796 (2011) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414,

nn.8-9, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)). "A court may assert general jurisdiction over

foreign (sister-state or foreign-country) corporations to hear any and all claims against them

when their affiliations with the State are so 'continuous and systematic' as to render them

essentially at home in the forum State." Id. (citing Int'l Shoe, 326 U.S. at 317, 66 S. Ct. at 159).

By contrast, whether a forum state may assert specific jurisdiction over a non-resident defendant

depends on "the relationship among the defendant, the forum, and the litigation." Walden v.

Fiore, 134 S. Ct. 1115, 1121 (2014) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775,

104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984)). "For a State to exercise jurisdiction consistent with

due process, the defendant's suit-related conduct must create a substantial connection with the

forum State." Id.

Here, Plaintiff contends that the Court has specific jurisdiction over non-resident

Defendant Freeman, because he "contact[ed] a North Carolina company and seek[s] benefits

under a North Carolina insurance policy." (Pl.'s Resp. to Def. Freeman's Mot. to Dismiss or

Transfer [Doc. #10], at 7.) Plaintiff does not contend that Defendant Freeman is subject to

general jurisdiction in this declaratory judgment action. Nor does Plaintiff allege facts consistent

with Defendant Freeman having an affiliation with North Carolina so "continuous and

systematic" as to render him at home in the forum state of North Carolina. Therefore, the Court will limit its discussion to the question of whether specific jurisdiction applies to Defendant Freeman.

In determining whether specific jurisdiction exists, the Fourth Circuit considers three factors: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arise out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." Tire Eng'g and Distrib., LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 301-02 (4th Cir. 2012) (citing CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 294 (4th Cir. 2009)). "If, and only if, [the Court] find[s] that the plaintiff has satisfied th[e] first prong of the test for specific jurisdiction need [the Court] move on to a consideration of prongs two and three." Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009).

Here, Plaintiff claims that although Defendant Freeman never traveled in person to North Carolina, he nonetheless purposefully availed himself of the privilege of conducting activities in North Carolina when he contacted Defendant Air Power, a North Carolina corporation, via telephone, in order to obtain assistance with the malfunctioning Graco equipment at the Unique Fabricating facility in Georgia. Plaintiff does not allege any additional contacts by Defendant Freeman with North Carolina other than this one phone call. Indeed, Plaintiff's Amended Complaint does not even allege that Defendant Freeman placed the call to Defendant Air Power. Rather, the Plaintiff alleges that Unique Fabricating contacted Defendant Graco requesting a recommendation for another distributor of Graco equipment that could

provide maintenance and service assistance, to which, Defendant Graco responded by referring Unique Fabricating to Air Power. (Am. Compl. [Doc. #5], ¶¶ 14-15.) Then, Plaintiff alleges that Unique Fabricating placed the phone call to Air Power. (Id. ¶ 18.) The Amended Complaint only alleges that Defendant Freeman was at some point on the phone with an Air Power agent while attempting to service the equipment, and during the phone call, the equipment unexpectedly and suddenly began operating, injuring Defendant Freeman. (Id. ¶¶ 20-21.)

Therefore, Defendant Freeman had one contact with North Carolina, which the Amended Complaint does not allege that he initiated. Furthermore, there is no indication that Defendant Freeman even knew at the time that he was speaking with a technician working for a company in North Carolina. "A defendant should be able to anticipate being sued in a court that can exercise personal jurisdiction over him; thus, to justify such an exercise of jurisdiction, a defendant's actions must have been 'directed at the forum state in more than a random, fortuitous, or attenuated way.'" Mitrano v. Hawes, 377 F.3d 402, 407 (4th Cir. 2004) (quoting ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 625 (4th Cir. 1997)). In looking at the quality and nature of Defendant Freeman's one contact with North Carolina, this contact by Defendant Freeman was not directed at North Carolina in such a way that was more than a random, fortuitous, or attenuated way. See Consulting Eng'rs Corp., 561 F.3d at 279-81 (concluding that the Court lacked personal jurisdiction over the defendant, despite the fact the defendant initiated contact with the plaintiff in the forum state, sent multiple telephone and email communications to the plaintiff in the forum state, and agreed that the forum state's law would be the choice-of-

law provision in one of the agreements at issue). Therefore, Defendant Freeman has not purposefully availed himself of the privilege of conducting activities in North Carolina, and thus, this Court does not possess personal jurisdiction over Defendant Freeman. As a result, the Court will grant Defendant Freeman's Motion to Dismiss [Doc. #6] on this basis, and need not consider the other bases upon which Defendant Freeman asks the Court to dismiss or transfer the case.

III.   DEFENDANT GRACO'S MOTION TO DISMISS

Defendant Graco's Motion to Dismiss [Doc. #13] is filed pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted. In reviewing a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Fourth Circuit has directed that courts "'take the facts in the light most favorable to the plaintiff,' but '[they] need not accept the legal conclusions drawn from the facts,' and '[they] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Id. (quoting Twombly, 550 U.S. at 556, 127 S. Ct. at 1965). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly, 550 U.S. at 557, 127 S. Ct. at 1966) (citations omitted). Thus, dismissal of a complaint is proper where plaintiff's factual allegations fail to "produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 683, 129 S. Ct. at 1952).

The Declaratory Judgment Act provides that "[i]n a case of actual controversy . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (2013). "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the right of litigants." Wilton v. Seven Falls Co., 515 U.S. 277, 286, 115 S. Ct. 2137, 2142, 132 L. Ed. 2d 214 (1995). As a court considers whether to exercise this discretion, the Fourth Circuit has explained that a declaratory judgment action is appropriate "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996) (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937)) (internal quotation marks omitted).

The Declaratory Judgment Act "should not be used 'to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted.'" Id. at 256-57 (quoting Quarles, 92 F.2d at 325).

Furthermore, in order for a district court to have jurisdiction to issue a declaratory judgment, (1) there must be a "case or controversy" within the confines of Article III of the U.S. Constitution and (2) the court, in its discretion, must be satisfied that declaratory relief is appropriate. White v. National Union Fire Ins. Co., 913 F.2d 165, 167 (4th Cir. 1990). The test for whether there is a "case or controversy" is "whether the dispute is 'definite and concrete, touching the legal relations of parties having adverse legal interests.'" Id. (citing Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41, 57 S. Ct. 461, 463-64, 81 L. Ed. 617 (1937)).

Here, Plaintiff does not insure Defendant Graco and Defendant Graco is not the injured party. Rather, the only possible connection between Defendant Graco and Plaintiff is that Defendant Graco and Defendant Air Power could be jointly and severally liable for damages if Defendant Freeman prevails in Count 4 of the underlying litigation.[3] Thus, if Plaintiff has a duty to indemnify Defendant Air Power, then there potentially could be a dispute involving both Plaintiff and Defendant Graco as to payment of those damages for which Defendant Graco and Defendant Air Power could be jointly and severally liable.

On this matter, the Court finds Lott v. Scottsdale Insurance Company, 811 F. Supp. 2d 1224 (E.D. Va. 2011), instructive. In Lott, an alleged joint tortfeasor ("Tortfeasor 1") and a

---

[3] Count 4, entitled "Combined and Concurring Conduct Causing Injury," is the only count Defendant Freeman brings against both Defendant Graco and Defendant Air Power, alleging that they are jointly and severally liable to Plaintiff. The other three counts are against either Defendant Graco or Defendant Air Power.

second alleged joint tortfeasor ("Tortfeasor 2") brought a declaratory judgment action against Tortfeasor 1's insurer, seeking a declaration that the insurer defendant was obligated to defend and indemnify Tortfeasor 1 in the underlying tort litigation. Id. at 1227-28. The insurer defendant moved to dismiss the action based on lack of standing. Id. at 1228. While the Lott court found that the insured, Tortfeasor 1, had standing in the action, it concluded that Tortfeasor 2 did not. Id. at 1232. The court stated, "[u]nlike a tort claimant, a joint tortfeasor's stake in the outcome of a coverage dispute between a different tortfeasor and that tortfeasor's insurer is generally too attenuated and remote to fall within Article III." Id. at 1231. "Not surprisingly, the parties have identified no case,[4] nor has any been found, holding that a joint tortfeasor has standing to participate in a declaratory judgment action concerning the duties to defend or indemnify owed to the other tortfeasor by its insurer." Id.

The "case or controversy" requirement under Article III, which rendered Tortfeasor 2 without standing to bring suit against the insurer in Lott, likewise precludes Plaintiff's action from proceeding against Defendant Graco in this case. A district court does not have jurisdiction to issue a declaratory judgment where there is no "case or controversy" (see White, 913 F.2d at 167), and here, Defendant Graco's only potential stake in the outcome of the coverage dispute between Plaintiff and Plaintiff's insured, Defendant Air Power, is that it may ultimately be held to be a joint tortfeasor with Defendant Air Power in Count 4 of the underlying litigation. Therefore, as the Lott court concluded that "a joint tortfeasor's stake in

---

[4] On this point, the Lott court noted that although Penn-America Insurance Co. v. Coffey, 368 F.3d 409 (4th Cir. 2004), involved a joint tortfeasor who was not dismissed in an action seeking a declaration of insurance coverage between another tortfeasor and its insurer, the "case or controversy" question was not before the Fourth Circuit on appeal.

the outcome of a coverage dispute between a different tortfeasor and that tortfeasor's insurer is generally too attenuated and remote to fall within Article III" (811 F. Supp. 2d at 1231), similarly, this sole potential connection between Defendant Graco and Plaintiff is too attenuated and remote to be a case or controversy under Article III. Furthermore, the Declaratory Judgment Act requires an actual controversy between the parties, and because Plaintiff has failed to allege an actual controversy between it and Defendant Graco, Plaintiff has failed to state a claim against Defendant Graco upon which relief may be granted. Therefore, the Court will grant Defendant Graco's Motion to Dismiss [Doc. #13] and dismiss Defendant Graco from this declaratory judgment action.

## IV. DEFENDANT AIR POWER'S MOTION TO STAY

Defendant Air Power contends that the Court, in its discretion, should stay this declaratory judgment action until the underlying litigation has concluded. Specifically, Defendant Air Power argues that the Nautilus[5] factors weigh in favor of granting a stay. Plaintiff, however, contends that the Nautilus factors do not apply here, as the underlying litigation is in another federal district court, rather than in state court.

---

[5] Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371 (4th Cir. 1994), abrogated in part on other grounds by Wilton v. Seven Falls Co., 515 U.S. 277, 115 S. Ct. 2137, 132 L. Ed. 2d. 214 (enumerating what are now known as the Nautilus factors as "the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts," "whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending," "whether permitting the federal action to go forward would result in unnecessary 'entanglement' between the federal and state court systems, because of the presence of 'overlapping issues of fact or law,'" and "whether the declaratory judgment action is being used merely as a device for 'procedural fencing'—that is, 'to provide another forum in a race for res judicata' or 'to achieve a federal hearing in a case otherwise not removable'").

"A court has the power to stay proceedings, which is 'incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" Doe v. Bayer Corp., 367 F. Supp. 2d 904, 914 (M.D.N.C. 2005) (quoting Landis v. N. Am. Co., 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936). In exercising its authority to grant a discretionary stay, the Court "must weigh competing interests and maintain an even balance." Landis, 299 U.S. at 254 (citing Kansas City S. R. Co. v. United States, 282 U.S. 760, 763, 51 S. Ct. 304, 305, 306, 75 L. Ed. 684 (1931); Enelow v. New York Life Ins. Co., 293 U.S. 379, 382, 55 S. Ct. 310, 311, 79 L. Ed. 440 (1935), overruled on other grounds by Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 108 S. Ct. 1133, 99 L. Ed. 2d 296 (1988)). Furthermore, "[t]he party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." Williford v. Armstrong World Indus., Inc., 715 F.2d 124, 127 (4th Cir. 1983).

The Nautilus factors that Plaintiff attempts to apply in order to weigh the competing interests in this case only apply where the underlying action is pending in *state* court. See Nautilus Ins. Co., 15 F.3d at 376-77 (adding an additional consideration to those previously enumerated in Mitcheson v. Harris, 955 F.2d 235 (4th Cir. 1992), to be applied when determining whether to grant a discretionary stay in a declaratory judgment action while the underlying litigation is pending in the state court). This understanding makes sense in light of the Nautilus factors themselves and how they are specific to considerations that do not apply in cases where the parallel litigation is in federal court. See id. at 376-77 (enumerating what are now known as the Nautilus factors as "the strength of the state's interest in having the issues

raised in the federal declaratory action decided in the state courts," "whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending," "whether permitting the federal action to go forward would result in unnecessary 'entanglement' between the federal and state court systems, because of the presence of 'overlapping issues of fact or law,'" and "whether the declaratory judgment action is being used merely as a device for 'procedural fencing'—that is, 'to provide another forum in a race for res judicata' or 'to achieve a federal hearing in a case otherwise not removable'"). Furthermore, after Plaintiff raised this point in its Response [Doc. #23], Defendant Air Power did not dispute that the Nautilus factors do not apply to this case in its Reply [Doc. #25]. The Court agrees that the Nautilus factors do not apply in this case, as the related actions are both in federal court.

Instead, generally "when the same parties pursue similar litigation in two separate federal courts, principles of comity dictate that the case should proceed where the action was first filed." Remington Arms Co. v. Alliant Techsystems, Inc., No. 1:03CV1051, 2004 WL 444574, at *2 (M.D.N.C. Feb. 25, 2004) (citing Elliot Mach Corp.v. Modern Welding Co., 502 F.2d 178, 180 n.2 (4th Cir. 1974)). Known as the "first-filed rule," courts generally will stay, dismiss, or transfer the second-filed case if the two cases are similar enough that the first-filed rule applies. Victaulic Co. v. E. Indus. Supplies, Inc., No. 6:13-01939-JMC, 2013 WL 6388761, at *2 (D.S.C. Dec. 6, 2013) (citing Harris v. McDonnell, No. 5:13-cv-00077, 2013 WL 5720355, at *3 (W.D. Va. Oct. 18, 2013)). Plaintiff contends that the first-filed rule does not apply in this case, and that even if the Court disagrees, the balance of conveniences exception nonetheless favors keeping the action in the Middle District of North Carolina. Defendant Air Power

responds that the first-filed rule does apply in this case.

To determine whether the first-filed rule applies, courts generally will consider three factors: (1) the chronology of the filings, (2) the similarity of the parties involved, and (3) the similarity of the issues being raised in both cases. Nutrition & Fitness, Inc. v. Blue Stuff, Inc., 264 F. Supp. 2d 357, 360 (W.D.N.C. 2003). In addressing the first factor under the first-filed rule, there is no disputing that the Georgia action was filed before the action in this Court was filed. Thus, the chronology of the filings weighs in favor of applying the first-filed rule. Furthermore, the second factor also does not defeat application of the first-filed rule. While there is a difference in the parties in each action, the only difference between the parties in the two cases is that the instant action includes Plaintiff, Pennsylvania Manufacturers Indemnity Company, which is not a party in the underlying action. The parties are similar enough for this factor to weigh in favor of applying the first-filed rule. See Smart Techs., Inc. v. Polyvision Corp., 3:04CV545, 2004 WL 6047007, at *3 (E.D. Va. Oct. 20, 2004) ("[T]he first-filed rule does not require the parties to be identical, but merely similar." (citing Blue Stuff, Inc., 264 F. Supp. 2d at 360-61)). Therefore, the Court finds that the second factor weighs in favor of application of the first-filed rule.

However, the third and final factor looks at the similarities and differences of the issues in this case and the underlying litigation. The instant action seeks a declaratory judgment over whether Plaintiff has a duty to defend or indemnify Defendant Air Power under its insurance policy in the underlying litigation. The underlying litigation, however, is a product liability action. While both actions have factual questions in common regarding various parties' actions

in relation to the equipment malfunction, the legal issues are entirely different. Thus, the third factor weighs heavily against applying the first-filed rule.

Although the first two factors weigh in favor of applying the first-filed rule, the third factor weighs so heavily against the rule's application that the Court concludes that the first-filed rule does not apply in this case. Because the first-filed rule does not apply in this case, the Court need not consider whether the balance of conveniences exception to the first-filed rule applies.

Regardless, the Court may nonetheless grant a discretionary stay if, upon balancing the competing interests, the Court determines that the moving party has justified the stay request by "clear and convincing circumstances outweighing potential harm to the party against whom it is operative." Williford, 715 F.2d at 127. A key factor to be considered by the Court is whether the entire controversy can be adjudicated before the underlying litigation is resolved. See Remington Arms Co., 2004 WL 444574, at *6 ("[C]ourts should not use declaratory judgments to 'try a controversy by piecemeal, or to try particular issues without settling the entire controversy . . . .'" (quoting Centennial Life Ins. Co., 88 F.3d at 256-57 (4th Cir. 1996)). Therefore, the Court will consider whether the duty to defend and the duty to indemnify can be determined by this Court prior to an adjudication on the merits in the underlying litigation.

"An insurer's duty to defend is broader than its duty to indemnify, and 'is based on the coverage contracted for in the insurance policy.'" Liberty Corporate Capital, Ltd. v. Delta Pi Chapter of Lambda Chi Alpha, No. 1:09cv765, 2012 WL 3308371, at *8 (M.D.N.C. Aug. 13, 2012) (quoting Mastrom, Inc. v. Cont'l Cas. Co., 78 N.C. App. 483, 484, 337 S.E.2d 162, 163 (1985)). An insurer's duty to defend under North Carolina law is determined based on the

events as *alleged* in the underlying litigation, rather than facts ultimately proven in the underlying litigation. See Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co., 315 N.C. 688, 691, 340 S.E.2d 374, 377 (1986) ("When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable." (citing Strickland v. Hughes, 273 N.C. 481, 487, 160 S.E.2d 313, 318 (1968)). Therefore, the Court need only compare the operative complaint in the underlying litigation with exclusions Plaintiff cites in the insurance policy in order to ascertain whether Plaintiff has a duty to defend Air Power. As such, the Court need not wait until the underlying litigation is resolved before determining whether Plaintiff has a duty to defend Air Power.

However, in considering the separate issue of the duty to indemnify, "[w]hile an insurer's duty to defend may be determined upon commencement of the underlying action, its duty to indemnify cannot be determined until the conclusion of the case[,] if necessary facts remain in dispute." Montgomery Mut. Ins. Co. v. Citadel Mgmt, LLC, No. 3:12-cv-797-FDW, 2013 WL 6147778, at *6 (W.D.N.C. Nov. 22, 2013) ((citing Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, LLC, 364 N.C. 1, 7, 692 S.E.2d 605, 611 (2010))); see Harleysville Mut. Ins. Co., 364 N.C. at 6, 692 S.E.2d at 610 ("An insurer's duty to defend is ordinarily measured by the facts as alleged in the pleadings; its duty to pay is measured by facts ultimately determined at trial." (quoting Waste Mgmt of Carolinas, Inc., 315 N.C. at 691, 340 S.E.2d at 377)). Therefore, the Court must look at the two exclusions that Plaintiff cites in order to determine whether necessary facts will remain in dispute as to the duty to indemnify until the underlying litigation is resolved.

The first exclusion Plaintiff cites applies when bodily injury arises out of "[a]n error, omission, defect or deficiency in . . . [a]n evaluation, a consultation, or advice given, by or on behalf of any insured." (Ex. 1 [Doc. #5-1], at 100.) This exclusion does not include or identify a definition for an evaluation, consultation, or advice. The Complaint in the underlying litigation alleges that an Air Power agent was negligent in giving "advice and technical assistance" to Defendant Freeman. (Ex. 2 [Doc. #5-2], ¶ 27.) Therefore, the merits of that claim will ultimately turn on a factual determination as to whether Defendant Air Power's agent gave Defendant Freeman advice and/or technical assistance, and if so, whether the agent acted negligently in giving such advice and/or technical assistance. If the underlying litigation determines that Defendant Air Power's agent was not negligent, then the indemnification issue will be moot. However, if Defendant Air Power is liable in the underlying litigation, but the liability was due to negligence in giving *technical assistance*, which appears on its face to fall outside the terms of the exclusion, then this first exclusion may not apply. Conversely, if Defendant Air Power is liable in the underlying litigation, but the liability was due to an error, omission, defect or deficiency in giving *advice*, then it appears that this first exclusion would apply. It is therefore impossible to determine whether this exclusion applies without knowing the content of the phone conversation and whether the liability, if any, results from the agent's technical assistance, rather than from an error, omission, defect or deficiency in advice.

The second exclusion that Plaintiff relies on is entitled "EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY." (Ex. 1 [Doc. #5-1], at 101.) This particular exclusion applies when bodily injury arises out of "the rendering of or

failure to render any professional services by [Defendant Air Power] or any engineer, architect or surveyor who is either employed by [Defendant Air Power] or performing work on [its] behalf." (Id.) While the exclusion does not outright define "professional services," it does state that "[p]rofessional services include: [t]he preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and [s]upervisory, inspection, architectural or engineering activities." (Id.) Therefore, this Court would need to determine whether the conversation that Defendant Air Power's agent had with Defendant Freeman constituted professional services, which the language of this exclusion implies is somewhat limited to the types of services provided by engineers, architects and surveyors. Without knowing the content of the phone conversation, or even the occupation of the Air Power agent with whom Defendant Freeman spoke, it is likely impossible to determine whether this second exclusion applies prior to an adjudication on the merits in the underlying litigation. Therefore, the Court concludes that necessary facts remain in dispute as to both exclusions cited by Plaintiff, and the Court cannot determine whether Plaintiff has a duty to indemnify Defendant Air Power without factual determinations in the underlying litigation.

As such, although a stay is not necessary for the Court to determine whether Plaintiff has a duty to defend, staying the action is the more efficient and appropriate option where the Court must wait until the resolution of the underlying litigation before it can rule on the entire controversy. See Remington Arms Co., 2004 WL 444574, at *6 ("[C]ourts should not use declaratory judgments to 'try a controversy by piecemeal, or to try particular issues without

settling the entire controversy . . . .'" (quoting <u>Centennial Life Ins. Co.</u>, 88 F.3d at 256-57 (4th Cir. 1996)). A determination on the merits of Plaintiff's duty to defend at this stage of the proceedings is premature, and while a delay in adjudicating Plaintiff's duty to defend may require Plaintiff to incur more costs on the front end if it ultimately does not have a duty to defend, the harm to Plaintiff would likely be minimal, as it has already undertaken Air Power's defense with a reservation of rights. (<u>See</u> Am. Compl. [Doc. #5], ¶ 24 ("[Plaintiff] is defending Air Power in Freeman's personal injury lawsuit under a reservation of rights.")) Therefore, after weighing the competing interests, the Court concludes that Defendant Air Power has justified its Motion to Stay by clear and convincing circumstances outweighing any potential harm to Plaintiff. As such, the Court will grant Defendant Air Power's Motion to Stay and stay this action pending a final adjudication on the merits in the underlying litigation.

V.     CONCLUSION

For the reasons stated above, it is hereby ordered that Defendant Freeman's Motion to Dismiss or Transfer [Doc. #6] is GRANTED and Plaintiff's Amended Complaint against Defendant Freeman is DISMISSED, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED that Defendant Graco's Motion to Dismiss [Doc. #13] is GRANTED and Plaintiff's Amended Complaint against Defendant Graco is DISMISSED, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

IT IS FINALLY ORDERED that Defendant Air Power's Motion to Stay [Doc. #21] is GRANTED, and all further proceedings in this case are hereby STAYED pending resolution of the underlying litigation in Freeman v. Graco, Inc. et al., No. 1:13cv662, (N.D. Ga.).

This the 16th day of April, 2014.

United States District Judge